1

2

3

4

5

6        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
                    AT SEATTLE
7

BONNY JEAN AUSTIN,
8
                          Plaintiff,           Case No. C16-471-RAJ
9
              v.                               **ORDER REVERSING AND**
10                                             **REMANDING CASE FOR**
                                               **FURTHER ADMINISTRATIVE**
NANCY A. BERRYHILL, Acting                     **PROCEEDINGS**
11   Commissioner of Social Security,[1]

12                        Defendant.

13        Bonny Jean Austin filed a *pro se* complaint and a subsequent amended complaint

14   requesting the Court reverse the Administrative Law Judge's (ALJ) decision finding her not

15   disabled. Dkt. 6, 9. On July 18, 2014, the ALJ issued a decision finding fibromyalgia, status

16   post ruptured ovarian cyst, gastritis and duodenitis, somatization disorder[2], and adjustment

17   disorder[3] to be severe impairments. Tr. 20-36. The ALJ determined Ms. Austin retained the

18

---

19   [1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to
     Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as
20   defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties
     should reflect this change.
21   [2] The American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders (5th ed.
     2013) (DSM-5) "defines … somatic symptom disorder[ ] on the basis of positive symptoms (distressing
22   somatic symptoms plus abnormal thoughts, feelings, and behaviors in response to these symptoms)."
     DSM-5 at 309-10.
23   [3] The DSM-5 describes the "essential feature of adjustment disorder" as "[t]he presence of emotional or
     behavioral symptoms in response to an identifiable stressor." DSM-5 at 287. The stressor may be a
     single event or there may be multiple stressors and stressors may be recurrent or continuous. *Id.*

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

Residual Functional Capacity (RFC) to perform medium work, with additional limitations including that she could perform simple, routine, tasks, could tolerate few, if any changes in work routine or environment, and could have no contact with the public. Tr. 26. The ALJ found that with this RFC Ms. Austin was not disabled because she could perform other jobs in the national economy including hand packager, kitchen helper, marker, and garment sorter. Tr. 35-36. The Appeals Council denied Ms. Austin's request for review making the ALJ's decision the Commissioner's final decision. Tr. 8-14.

In her amended complaint and opening brief, Ms. Austin lists claimed impairments of: severe anxiety; manic rage; bi-polar; dysplasia; asthma; chronic respiratory issues; and migraines due to head trauma. Dkts. 9, 15. As the ALJ's decision does not discuss these claimed impairments the Court understands Ms. Austin to argue that the ALJ erred in failing to consider these impairments severe. *Id.*; Dkt. 14. Ms. Austin also lists claimed impairments of: depression; PTSD; loss of short term memory and some long term memory loss due to head trauma; neck, shoulder and back pain; severe nausea daily; fibromyalgia; endometriosis; ovarian cyst; thyroid disorder; IBS; spastic colon; arthritis and acid reflux. *Id.* These claimed impairments are noted by the ALJ in the decision and the Court understands Ms. Austin's amended complaint and opening brief to challenge the ALJ's evaluation of the medical opinion evidence and lay opinion evidence with respect thereto. *Id.* The Court also understands Ms. Austin's amended complaint and opening brief to challenge the ALJ's decision to find her not

Moreover, the "symptoms or behaviors are clinically significant, as evidence by one or both of the following: 1. Marked distress that is out of proportion to the severity or intensity of the stressor, taking into account the external context and the cultural factors that might influence symptom severity and presentation. 2. Significant impairment in social, occupational, or other important areas of functioning." *Id.* at 286.

entirely credible with respect to her symptoms.  *Id.*  Ms. Austin also argues that the ALJ erred in considering the testimony of the vocational expert at the hearing.  Dkt. 15 at 6.

As discussed below, the Court concludes the ALJ erred in evaluating some of the medical and lay opinion evidence.  The Court accordingly **REVERSES** and **REMANDS** this case for further administrative proceedings.

## DISCUSSION

### A.    Standard of Review

Ms. Austin asks the Court to review and reverse the ALJ's decision, which is the Commissioner's final decision in this case.  After the Commissioner's final decision, a person seeking social security disability benefits "may obtain a review of such decision by a civil action" in district court.  42 U.S.C § 405(g).  As with other agency decisions, this Court's review of social security determinations is limited.  The Court may reverse the ALJ's decision finding a person not disabled "only if it is not supported by substantial evidence or is based on legal error."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  Importantly, when the evidence is susceptible to more than one rational interpretation—the claimant's and the ALJ's— the Court must uphold the ALJ's interpretation if it is supported by inferences reasonably drawn from the record.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Because an individual's entitlement to disability benefits is a highly fact-intensive individualized determination, Congress has placed "a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency."  *Consolo v. Fed. Mar. Comm'n.*, 383 U.S. 607,

621 (1966).  Consequently, the ALJ, not the Court, determines credibility and resolves conflicts in the testimony or ambiguities in the record.  *See* 42 U.S.C. § 405(g) (directing that the Commissioner's "findings . . . as to any fact, if supported by substantial evidence, shall be conclusive.").  The person seeking review of the ALJ's determination (the claimant) has the burden of showing that the ALJ committed harmful error.  *Molina v. Astrue*, 674 F.3d 1104, 111 (9th Cir. 2012).  As such, it is Ms. Austin, not the Commissioner, who must prove the ALJ harmfully erred in finding her not disabled.  While the Court may not try Social Security claim cases de novo, it has a "duty 'to scrutinize the record as a whole to determine whether the conclusions reached have a reasonable basis in law.'"  *Ainsworth v. Finch*, 437 F.2d 446, 446 (9th Cir. 1971) (quoting *Hicks v. Gardner*, 393 F.3d 299, 302 (4th Cir. 1968).  Additionally, where a party proceeds pro se, the Court must construe the allegations of the pleading liberally and afford her the benefit of any doubt.  *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc) (citation omitted).

The Social Security Act regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled.  *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir.1999); 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof for step five.  *Id.*  The five steps of inquiry include:

1. Is the claimant engaged in substantial gainful activity?  If so, the claimant is not disabled within the meaning of the SSA.  If not, the inquiry proceeds to step two.

2. Does the claimant have a severe impairment or impairments?  If so, the inquiry proceeds to step three.  If not, the claimant is not disabled.

3. Does the impairment or impairments meet or equal one of a list of specific

1    impairments described in 20 C.F.R. Part 404, Subpart P, App. 1?  If so, the claimant is

2    disabled.  If not, the inquiry proceeds to step four.

3    4. Is the claimant able to perform past work?  If so, the claimant is not disabled.  If not,

4    the inquiry proceeds to step five.

5    5. Is the claimant able to do any other work that exists in significant numbers in the

6    national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

7    *See* 20 C.F.R. §§ 404.1520, 416.920.

8    **B.    Evaluation of Severe Impairments at Step Two**

9    Ms. Austin contends the ALJ erred in failing to properly consider her anxiety, manic

10    rage, bi-polar disorder, dysplasia, asthma, chronic respiratory issues and migraines due to head

11    trauma.  Dkts. 9, 15.  The ALJ did not discuss these claimed impairments in his decision.  Ms.

12    Austin, as the claimant, has the burden at step two of the sequential evaluation to show that (1)

13    she has a medically determinable physical or mental impairment, and (2) the medically

14    determinable impairment is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  A

15    "'physical or mental impairment' is an impairment that results from anatomical, physiological, or

16    psychological abnormalities which are demonstrable by medically acceptable clinical and

17    laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  "'Regardless of

18    how many symptoms an individual alleges, or how genuine the individual's complaints may

19    appear to be, the existence of a medically determinable physical or mental impairment cannot be

20    established in the absence of objective medical abnormalities; i.e., medical signs and laboratory

21    findings[.]'"  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p).  In

22    addition to producing evidence of a medically determinable physical or mental impairment, the

23    claimant bears the burden of establishing that the impairment or impairments is "severe."  *See*

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 5

1    *Bowen*, 482 U.S. at 146.  An impairment or combination of impairments is severe if it

2    significantly limits the claimant's physical or mental ability to do basic work activities.  20

3    C.F.R. §§ 404.1520(c), 404.1521(a).

4          Here, while "manic rage" is a symptom Ms. Austin claims to experience, it is not

5    diagnosed separately as a medically determinable impairment or supported by medical signs and

6    laboratory findings.  Dkts. 9, 15 at 1.  Moreover, migraines, dysplasia, asthma and respiratory

7    issues are mentioned very infrequently in the medical record and typically in the medical history

8    section of the records, not as current or ongoing impairments or complaints.  Furthermore, Ms.

9    Austin fails to point to any evidence indicating that these claimed impairments affect her ability

10   to perform basic work activities.  Accordingly, the Court cannot conclude the ALJ erred in

11   failing to find these claimed impairments to be severe.  Ms. Austin also contends she has anxiety

12   and bipolar disorder.  Dkts. 9, 15.  However, these impairments do not appear to be established

13   as separate impairments by objective medical evidence from an acceptable medical source in the

14   record.[4]  *See* 20 C.F.R. §§ 404.1521, 20 C.F.R. § 416.921 (a physical or mental impairment must

15   be established by objective medical evidence from an acceptable medical source); 20 C.F.R.

16   §404.1502 (listing acceptable medical sources as licensed physicians, licensed psychologists,

17   licensed optometrist, licensed podiatrist, qualified speech-language pathologist, licensed

18   audiologist, and for claims filed on or after March 27, 2017, licensed advanced practice

19   registered nurses and licensed physician assistants); *see* SSR 06-03p (licensed clinical social

20   workers and therapists are not considered "acceptable medical sources").  Accordingly, the Court

21   also does not find the ALJ erred in failing to consider these claimed impairments severe.

22

23   ----

[4] The ALJ does, however, include adjustment disorder and somatization disorder as severe impairments. Tr. 22.

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 6

## C.    The ALJ's Evaluation of the Medical Evidence

Ms. Austin also challenges the ALJ's evaluation of the medical opinion evidence with respect to her mental and physical impairments. Dkts. 9, 15.  The Court agrees the ALJ erred in evaluating some of the medical opinion evidence.

### 1.    Jacqueline Fogerty, M.A.

The ALJ erred in evaluating the opinion of Jacqueline Fogerty, M.A. Ms. Fogerty evaluated Ms. Austin in July 2012 and diagnosed her with major depressive disorder, recurrent, moderate, as well as a rule out diagnosis of panic disorder without agoraphobia.[5] Tr. 811.  Ms. Fogerty indicated that Ms. Austin is markedly impaired in the areas of "response to stress", "depressive symptoms", "community living", and "health status" where "marked" is defined as "obvious impairment, inadequate functioning[.]"  Tr. 821.  Ms. Fogerty further indicated that Ms. Austin was "slightly impaired" in the areas of "negative social behavior", "self care", "social withdrawal", "sustained attention", "physical" and "anxiety symptoms" where "slight" is defined as "limited impairment or disruption in functioning[.]"  Tr. 821.  Ms. Fogerty assessed a Global Assessment of Functioning[6] score of 46 which is described as "serious symptoms (e.g. suicidal

---

[5] Major depressive disorder and panic disorder were not included as severe impairments by the ALJ. Tr. 22.  However, the ALJ does include adjustment disorder and somatization disorder as severe mental impairments.  *Id.*; *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (noting "adjustment disorder (i.e., symptoms of anxiety and depression)" as a severe impairment).  In assessing RFC, the ALJ must "consider the limiting effects of all [a claimant's] impairments, even those that are not severe, in determining [a claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(e), 416.945(e); *see* SSR 96-8p; *and see Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003).

[6] The GAF score is "a subjective determination based on a scale of 1 to 100 of 'the clinician's judgment of the individual's overall level of functioning.'"  *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n. 1 (10th Cir. 2007) (quoting American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. 2000) (DSM-4)).  A GAF score falls within a given 10-point range if either the severity of symptoms or the level of functioning falls within the range. DSM-4 at 32.  A GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as having no friends or the inability to keep a job. *Id.* at 32.  A GAF score of

ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Tr. 811. There is also a section of the evaluation entitled "disability-impairment" where there are check boxes available with headings of "no disability", "developmental disability – physical", "developmental disability – mental", "visual disability", "deaf", "hard of hearing", "other communication difficulties", "medically compromised homebound", "other medical or physical disabilities", and "other neurological disabilities." Tr. 821. Ms. Fogerty checked the box for "no disability" on that section of the form. *Id.*

In evaluating Ms. Fogerty's opinion the ALJ gives "great weight" to Ms. Fogerty's opinion that "the claimant did not have a mental disability." Tr. 33. However, this finding misconstrues Ms. Fogerty's opinion to some extent. The check boxes available in the section denominated "disability – impairment" appear to relate to whether the individual has a developmental or physical disability, not to whether Ms. Austin has a mental health impairment which the remainder of her opinion appears to indicate she does, in fact, have. Tr. 811-25. Moreover, the ALJ failed to address entirely Ms. Fogerty's opinion with respect to the specific areas of "slight" and "marked" impairment. Tr. 821. While Ms. Fogerty is considered an "other source" witness, rather than an acceptable medical source, her opinion is "competent evidence that an administrative law judge (ALJ) must take into account in a social security disability case, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's failure to address these aspects of Ms. Fogerty's opinions was error. Moreover, this error cannot be

---

31–40 indicates "some impairment in reality testing and communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *Id.*

considered harmless as, in particular, the marked impairments in the areas of "response to stress" and "depressive symptoms", were not either properly rejected or accounted for in the RFC or in the hypothetical to the vocational expert. Tr. 821; *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006) (an error is harmless only if it is "inconsequential to the ultimate nondisability determination"). As such, the Court "cannot confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.*

The ALJ also discounts Ms. Fogerty's GAF score on the grounds that GAF scores are an attempt to rate "symptoms *or* functioning" and "it is not clear what the clinicians were rating." Tr. 33. However, the record does not support this rationale for dismissing Ms. Fogerty's GAF score. Rather, the GAF score appears to be based on the assessments of marked limitations in several areas including depressive symptoms and response to stress and which, as noted above, the ALJ errs in failing to directly address. Tr. 33. Accordingly, the ALJ also erred in failing to give a germane reason for rejecting Ms. Fogerty's GAF score.[7]

In light of these errors, on remand, the ALJ should reevaluate Ms. Fogerty's opinion.

### 2. Anne K. Mulcahy, ARNP

Ms. Mulcahy evaluated Ms. Austin in September 2012 and assessed a GAF of 50. Tr.

---

[7] The ALJ also discounted GAF scores generally on the grounds that they incorporate the claimant's subjective symptom complaints. Tr. 33. Although GAF scores are not dispositive of mental disability for social security purposes they are relevant evidence that should be considered and can only be rejected, in this instance, for "reasons germane to each witness." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see, e.g., Vanbibber v. Colvin*, No. C-546-RAJ, 2014 WL 29665, at *2 (W.D. Wash. Jan. 3, 2014) (a general, boilerplate discussion of why GAF scores do not correlate to a finding of disability is not sufficient to discount a specific GAF score); *McCarten v. Colvin*, No. C14-0225-JCC, 2014 WL 4269 (W.D. Wash. Aug. 29, 2014) (finding the ALJ's generic reasons for rejecting GAF scores insufficient, including the rationale that they incorporated the claimant's subjective complaints as well as external factors not relevant to the disability determination).

967.  In contrast to Ms. Fogerty, the ALJ did not err in discounting Ms. Mulcahy's GAF score of 50 on the grounds that it was not clear what she was rating.  Tr. 33.  Ms. Mulcahy's evaluation does not explain the basis for the GAF score nor do her objective findings, namely the mental status examination (MSE), appear to support it.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount a medical opinion that is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings.").  Accordingly, the Court finds the ALJ did not err in rejecting Ms. Mulcahy's GAF score.

### 3.  *Matthew Comrie, Psy.D. and Leslie Postovoit, Ph.D.*

The ALJ also erred in evaluating the opinions of Dr. Comrie and Dr. Postovoit.  Dr. Comrie is a State agency consulting psychiatrist who reviewed Ms. Austin's records in August 2012.  Tr. 88-109.  The ALJ is required to consider as opinion evidence the findings of State agency medical consultants and to explain the weight given to such opinions.  *See* 20 C.F.R. § 416.927(f)(2)(i)-(ii); *see also* SSR 96–6p (1996), 1996 WL 374180, at *2 (S.S.A.1996) (stating that an ALJ "may not ignore" the opinions of State agency medical and psychological consultants "and must explain the weight given to these opinions in their decisions"); *Sawyer v. Astrue*, 303 Fed.Appx. 453, 455 (9th Cir. 2008).  "The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Dr. Comrie found Ms. Austin moderately limited in the ability to interact appropriately with the general public, indicating that she "should avoid working with the public due to mood lability" but "[s]he has the social skills to interact with co-workers and supervisors."  Tr. 106.  Dr. Comrie also found Ms. Austin moderately limited in the ability to respond appropriately to changes in the work setting and that she "should work in a stable environment."  Tr. 106-107.

Dr. Comrie further found Ms. Austin moderately limited in the ability to maintain attention and concentration for extended periods, in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 106. Dr. Comrie indicated that Ms. Austin "has the capacity to carry out simple and complex instructions. Her symptoms would interfere with concentration and job attendance at times but she retains the capacity to perform work activities most of the time." *Id.* Dr. Postovoit, another State agency psychological consultant, affirmed Dr. Comrie's findings in December 2012. Tr. 122.

The ALJ gave Dr. Comrie's and Dr. Postovoit's opinions significant weight indicating that "their recommendations for mental residual functional capacity have been incorporated into the RFC" and "[t]he reduced obligations of simple routine tasks, with no public contact and few changes, appropriately addresses the concerns for concentration, persistence, and pace." Tr. 33. However, the limitations identified by the ALJ do not capture the limitations in concentration, persistence and pace found by Dr. Comrie and Dr. Postovoit. Even by the terms of Dr. Comrie and Dr. Postovoit's own reports, the limitations to no public contact and few changes address the moderate limitations in social interaction and adaptive ability but do not specifically address the moderate limitations in concentration, persistence and pace. Tr. 106-07, 122-23. Likewise, under the circumstances here, substantial evidence does not support the ALJ's finding that "simple, repetitive work" accounts for the limitations in concentration, persistence and pace described by Dr. Comrie and Dr. Postovoit. Tr. 33. "An ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence or pace where the

assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (Finding the ALJ's RFC limitation to simple tasks consistent with the medical testimony where "Dr. Eather's report, which [ ] identified 'a slow pace, both in thinking & actions' and several moderate limitations ....ultimately concluded that [the claimant] retained the ability to 'carry out simple tasks ....'"). However, a limitation to simple, repetitive tasks does not account for limitations in concentration, persistence and pace where such a finding is not consistent with the medical testimony. *See Brink v. Comm'r of Soc. Sec. Admin.*, 343 Fed.Appx. 211, 212 (9th Cir. 2009) (unpublished opinion) (memorandum opinion) (finding error where the ALJ accepted medical evidence that the claimant was moderately limited in maintaining concentration, persistence, or pace but referenced only "simple, repetitive work," in the RFC without including limitations on concentration, persistence or pace.). *Lubin v. Comm'r. Soc. Sec.,* 507 Fed.Appx. 709, 712 (9th. Cir. 2013) (unpublished opinion) (memorandum opinion) ("Although the ALJ found that [the claimant] suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert").

Here, Dr. Comrie and Dr. Postovoit did not indicate that a limitation to simple, repetitive tasks would accommodate Ms. Austin's limitations in concentration, persistence and pace. *Cf. Stubbs-Danielson, supra*, 539 F.3d at 1173. Rather, Dr. Comrie and Dr. Postovoit indicated that Ms. Austin could carry out simple and complex instructions but that her "symptoms would interfere with concentration and job attendance at times" although "she retains the capacity to perform work activities most of the time." Tr. 106, 122. Accordingly, the limitation to simple, repetitive tasks does not adequately account for Dr. Comrie's and Dr. Postovoit's opinions that

Ms. Austin had moderate limitations in the areas of concentration, persistence and pace. In light of the ALJ's failure to include the moderate limitations in the areas of concentration, persistence and pace described by Dr. Comrie and Dr. Postovoit in the RFC, and in the resulting hypothetical to the vocational expert, the work described by the vocational expert may require speed, concentration and persistence that Ms. Austin lacks. *See Lubin*, 507 Fed.Appx. at 712 (finding the limitation to "'one to three step tasks due to pain and prescription drug/marijuana use' did not capture the [moderate] limitations in concentration, persistence, or pace found by the ALJ" and, therefore, "[t]he work described by the vocational expert may still require the speed and concentration [the claimant] lacks.").

According, the Court finds the ALJ harmfully erred in failing to either properly reject or include the moderate limitations in the areas of concentration, persistence and pace described by Dr. Comrie and Dr. Postovoit in the RFC or in the hypothetical to the vocational expert. *Stout*, 454 F.3d at 1055-56 (an error is harmless only if it is "inconsequential to the ultimate nondisability determination"). On remand, the ALJ should reevaluate Dr. Comrie's and Dr. Postovoit's opinions that Ms. Austin is moderately limited in the ability to maintain attention and concentration for extended periods, in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 106, 122.

### 4. Ona Schulz, PA-C, Philip N. Buenvenida, M.D. and Washington State Department of Social and Health Services (DSHS) Determination

The ALJ did not err in evaluating the opinions of Ona Schulz, PA-C, Philip N.

1    Buenvenida, M.D., and the resulting DSHS disability determination.  The ALJ must give specific

2    and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted

3    by another doctor, and clear and convincing reasons for rejecting a treating or examining

4    doctor's uncontradicted opinion.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  The ALJ

5    must give germane reasons for rejecting the opinion of an "other source" witness such as a

6    physician's assistant.  *See Lewis*, 236 F.3d at 511; 20 C.F.R. §404.1502; SSR 06-03p.  Ms. Shulz

7    and Dr. Buenvenida performed a physical evaluation of Ms. Austin on behalf of DSHS in May

8    2012.  Tr. 1191-94.  Their evaluation determined that Ms. Austin was limited to lifting and

9    carrying 10 pounds, could stand for six hours in an eight-hour workday, sit for most of the day,

10   and could perform repeated bending, squatting, kneeling or crawling.  *Id.*  The ALJ accepted all

11   of the limitations as consistent with the RFC except the limitation to lifting and carrying 10

12   pounds.  Tr. 34.  However, the ALJ properly discounted the limitation to lifting and carrying 10

13   pounds as inconsistent with the normal results of the physical examination.  *See Bayliss v.*

14   *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (an ALJ may reject an examining physician's

15   opinion if it is contradicted by clinical evidence).  The ALJ also properly rejected this limitation

16   on the grounds that evaluation indicated the limitations were only expected to impair work

17   function for three months.  Tr. 34, 1191-94.  Temporary limitations are insufficient to meet the

18   durational requirement for a finding of disability.  *See Carmickle v. Comm'r Soc. Sec. Admin.*,

19   533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term

20   excuse from work was not indicative of "claimant's long term functioning.").  Thus, the ALJ also

21   properly discounted the resulting DSHS physical disability determination on the grounds that the

22   disability was only expected to last for three months.  Tr. 1200-1204.

23          Accordingly, the ALJ did not err in evaluating the opinions of Ms. Shultz and Dr.

1   Buenvenida and the DSHS physical disability determination.

2        **5.    *Shawn K. Kenderdine, Ph.D. and DSHS***

3        The ALJ also did not err in evaluating the opinion of Dr. Kenderdine and the resulting

4   DSHS mental disability determination.  Dr. Kenderdine performed a psychological evaluation of

5   Ms. Austin, including a MSE on behalf of DSHS in May 2012.  Tr. 1195-98.  Dr. Kenderdine

6   provisionally diagnosed Ms. Austin with undifferentiated somatization disorder and adjustment

7   disorder with anxiety.  Tr. 1195.  However, Dr. Kenderdine's MSE demonstrated largely normal

8   results and he found Ms. Austin capable of performing activities of daily living.  Tr. 1196-98.

9   Moreover, in assessing the effect of Ms. Austin's symptoms on her ability to work, Dr.

10  Kenderine opined that "the impediments to her being able to tolerate normal work-related

11  stressors appear to be primarily physical" and while she "experiences some anxiety and

12  emotionality in response to her physical difficulties … she does not appear to suffer from a

13  significant psychiatric or cognitive impairment."  Tr. 1198.  Dr. Kenderdine further indicated

14  that Ms. Austin's prognosis was satisfactory with medical treatment and that, to the extent he

15  found her impaired, her impairment was expected to last eight to twelve months.  *Id.*  The ALJ

16  gave great weight to Dr. Kenderdine's opinion.  Tr. 33.

17       Based on Dr. Kenderdine's report, DSHS concluded Ms. Austin had a mental impairment

18  that was expected to impair work function for eight to twelve months and that she was disabled

19  due to mental incapacity.  Tr. 1189.  However, the ALJ reasonably discounted this conclusion as

20  internally inconsistent as the DSHS evaluation included no marked or severe limitations in

21  mental functioning but only moderate limitations in the ability to be aware of normal hazards and

22  take appropriate precautions and the ability to set realistic goals and make plans independently.

23  *See Bayliss*, 427 F.3d at 1216 (an ALJ may reject an examining physician's opinion if it is

ORDER REVERSING AND REMANDING
CASE FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15

1    contradicted by clinical evidence).  The ALJ also reasonably discounted the DSHS finding as

2    inconsistent with Dr. Kenderdine's report which indicated Ms. Austin's impediments to

3    tolerating normal work-related stressors were primarily physical and that she did not suffer from

4    a significant psychiatric impairment.  *See id.*  Dr. Kenderdine's report also did not include any

5    limitations in the ability to be aware of normal hazards and take appropriate precautions or the

6    ability to set realistic goals and make plans independently, and while the DSHS report includes

7    check-boxes indicating such limitations, it offers no explanation of the basis for this finding.  *See*

8    *id.*; *see Batson,* 359 F.3d at 1195 (an ALJ may discount a medical opinion that is "conclusory,

9    brief, and unsupported by the record as a whole or by objective medical findings."); *see also*

10   *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir.1996) (finding the ALJ's rejection of a check-off

11   report that did not contain an explanation of the bases for its conclusions was permissible).

12   Accordingly, the ALJ reasonably discounted the DSHS report and findings as inconsistent with

13   Dr. Kenderdine's opinion and findings.

14          Accordingly, the ALJ did not err in evaluating Dr. Kenderdine's opinion or in

15   discounting the DSHS report and finding of mental disability.

16      **6.      *Wayne Hurley, M.D.***

17          The ALJ also did not err in evaluating the opinion of Dr. Hurley.  Dr. Hurley is a State

18   agency consulting physician who reviewed Ms. Austin's records in December 2012 and assessed

19   her physical capacity.  Tr. 121.  Dr. Hurley found Ms. Austin capable of lifting 50 pounds

20   occasionally and 25 pounds frequently, that she could stand and/or walk (with normal breaks) for

21   a total of about 6 hours in an 8-hour workday, and that she could sit (with normal breaks) for a

22   total of about 6 hours in an 8-hour workday.  *Id.*  The ALJ gave significant weight to Dr.

23   Hurley's opinion and, by limiting Ms. Austin to medium work, included the limitations

contained in his opinion in the RFC and in the hypothetical to the vocational expert.  Tr. 26; *see* 20 C.F.R. §§ 404.1567(c), 416.967(c); SSR 83–10.  The Court finds no error with respect to the ALJ's evaluation of Dr. Hurley's opinion.

**D.      The ALJ's Evaluation of the Lay Opinion Evidence**

The ALJ erred in evaluating the lay witness statements of Rachel Williams and Clifford Leavitt.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout*, 454 F.3d at 1053.  "Lay testimony as to a claimant's symptoms is competent evidence that an administrative law judge (ALJ) must take into account in a social security disability case, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis*, 236 F.3d at 511.  Ms. Williams, a friend of Ms. Austin's, submitted a statement indicating that Ms. Austin has endometriosis[8], that when she has her period she may have to go to the hospital, and "her pain and nausea are so uncontrollable she could be out for one to three days."  Tr. 302.  Ms. Williams statement indicates that when Ms. Austin is not experiencing this pain and nausea she can do activities such as take care of animals, do household chores, handle money, craft, paint, make jewelry, garden.  Tr. 303-307.

In evaluating Ms. Williams' statement the ALJ notes that although Ms. Austin "may have nausea and pain during her periods … these do not seem to limit her abilities to do many

---

[8] The Court notes that the ALJ did not include endometriosis as a severe impairment but that he did include somatization disorder as well as gastritis, duodenitis and post ruptured ovarian cyst as a severe impairments.  Tr. 22.  Ms. Williams' statement regarding the effect Ms. Austin's symptoms have on her ability to function is still relevant, and should be evaluated by the ALJ, whether or not she, as a lay person, accurately attributed those symptoms to endometriosis or whether they may potentially be attributable to a different impairment.

different activities." Tr. 34. The ALJ also states that "Ms. Williams' statements do not show the claimant is more limited than set forth in the residual functional capacity assessment in this decision." *Id.* Substantial evidence does not support these reasons for discounting Ms. Williams' statement. Specifically, Ms. Williams does not indicate that Ms. Austin is capable of the various activities listed when she is experiencing pain and nausea. Tr. 302-309. Moreover, Ms. Williams' statement that, due to pain and nausea, Ms. Austin "could be out for one to three days", potentially, per month is not properly rejected by the ALJ or accounted for in the RFC or in the hypothetical to the vocational expert. Tr. 302. In fact, the vocational expert testified that if an individual were to require two or more unexcused absences per month she would not be able to maintain employment. Tr. 81. Accordingly, the Court finds the ALJ erred in failing to either properly reject or account for Ms. Williams' statement that due to pain and nausea, Ms. Austin "could be out for one to three days", potentially, per month. Tr. 302. On remand the ALJ should reevaluate this statement.

Clifford Leavitt, Ms. Austin's uncle, also submitted a lay witness statement in which he indicated that Ms. Austin resides with him. Tr. 639-40. Mr. Leavitt indicated that Ms. Austin has always been a hard worker and an independent strong person but that in the last couple of years he has watched her medical conditions worsen to the point where "she cannot work and every day is a struggle for her." Tr. 639. Mr. Leavitt indicates that Ms. Austin is in constant pain, runs into walls, falls over and needs help getting up, that she is constantly hitting her head as well as other body parts, that her memory has been affected by her head trauma and that she has become anxious and depressed, lost interest in her favorite hobbies and is fearful of being far from home or the hospital. *Id.* The ALJ erred in failing to address Mr. Leavitt's statement entirely. *See Stout*, 454 F.3d at 1055; *Lewis*, 236 F.3d at 511. Moreover, the Court cannot find

this error harmless because it "cannot confidently conclude that no reasonable ALJ, when fully crediting the testimony [as to the effect of Ms. Austin's impairments on her ability to function], could have reached a different disability determination." *Stout*, 454 F.3d at 1055.

Accordingly, on remand, the ALJ should evaluate Mr. Leavitt's statement.

**E.    Ms. Austin's Symptom Testimony**

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina,* 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez*, 572 F.3d at 591. "If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. Here, the ALJ provided several clear and convincing reasons for discounting Ms. Austin's testimony.

The ALJ discounted the credibility of Ms. Austin's symptom testimony due to inconsistencies with the medical evidence and her apparent failure to seek treatment with respect to some of her allegedly debilitating impairments. Tr. 26-32. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). Here, Ms. Austin testified that the main reason she was unable

to work was due to her head trauma from a fall in February 2012. Tr. 65. Ms. Austin alleged that her head trauma caused symptoms of vertigo, memory loss, blurred and double vision, that loud noises or high pitched sounds hurt her ears. Tr. 342, 350. However, as the ALJ notes, Ms. Austin's head trauma was not a severe impairment as objective testing did not reflect ongoing problems with dizziness, memory, hearing or vision problems. Tr. 32. For instance, the ALJ noted that memory testing in May 2012 showed Ms. Austin was able to recall 3/3 items after five minutes, suggesting she was capable of learning new materials. Tr. 32. Moreover, despite these complaints, the records generally do not reflect that Ms. Austin sought ongoing treatment for vertigo, hearing, or vision problems. Tr. 23; *see Tommasetti*, 533 F.3d at 1039 (in assessing a claimant's credibility, the ALJ may also properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)); SSR 96–7p, 1996 WL 374186, at *7 (July 2, 1996) (claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"). The ALJ also notes that despite complaining of significant swelling and pain in her hands when writing or gripping, on examination in October 2012 Ms. Austin's hands showed no swelling. Tr. 31, 981. These were valid reasons to discount the credibility of Ms. Austin's testimony.[9]

---

[9] The ALJ also gave several other reasons for discounting Ms. Austin's testimony. Tr. 26-32. However, the Court need not address these other reasons in detail because, even if erroneous their inclusion is harmless as they do not negate the ALJ's other valid reasons for discounting Ms. Austin's testimony. *See Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason, among other reasons for discounting a claimant's testimony, is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall determination).

Accordingly, the ALJ did not err in discounting the credibility of Ms. Austin's symptom testimony.

**F.    Other Issues**

Ms. Austin also contends, in her opening brief, that "during the hearing the professional occupational therapist … told the Judge I was unfit to work.  That I would be unreliable, unable to work for more than a few hours if not to [sic] sick and I would require many breaks.  Essentially making me unhireable."  Dkt. 15 at 6.  However, the testimony Ms. Austin refers to was elicited in response to additional hypothetical limitations which the ALJ did not ultimately determine applied to Ms. Austin.  Tr. 80-82.  Accordingly, the Court does not find the ALJ separately erred in failing to properly consider the vocational expert's testimony as it stands.  However, because the ALJ erred in considering some of the medical and lay opinion evidence, on remand, the ALJ will also reevaluate the RFC and obtain additional vocational expert testimony as necessary.

The Court also notes that the record contains a post-hearing opinion from Bianca Solitaire, M.A., L.M.C.A, dated October 28, 2014, indicating that Ms. Austin is a patient at Sound Mental Health and was diagnosed with bipolar II disorder and panic disorder.  Tr. 1267.  Ms. Solitaire indicates that Ms. Austin has marked impairments in several areas.  *Id.*  Because this matter must be remanded for other reasons the Court need not address whether this post-hearing evidence separately requires remand.  However, because this matter must be remanded for other reasons, in reevaluating the evidence on remand, the ALJ should also consider the post-hearing evidence.

**G.    Scope of Remand**

In general, the Court has "discretion to remand for further proceedings or to award

benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, there is conflicting evidence in the record and it is not clear that the ALJ would be required to find Ms. Austin disabled if the medical and lay opinion evidence were properly considered. Because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Ms. Fogerty, Dr. Comrie, Dr. Postovoit, Ms. Williams and Mr. Leavitt as provided above, consider any post-hearing evidence, reassess and determine the RFC and reevaluate Ms. Austin's ability to perform past work (step four) or other work in the national economy (step five) with the assistance of a vocational expert

as necessary.

DATED this 14th day of April, 2017.

The Honorable Richard A. Jones
United States District Judge